UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK K. BOWSER,

        Plaintiff,

        v.

SERGEANT D. Smith *et al.*,

        Defendants.

Case No. 16-cv-01455 (TNM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark K. Bowser is an inmate at the District of Columbia Jail. He alleges that he was "severely assaulted" by another inmate being escorted by defendant Sergeant Douglas Smith. Am. Compl. at 1 [Dkt. # 6]. Appearing *pro se*, plaintiff has sued Sgt. Smith and the District of Columbia under 42 U.S.C. § 1983, seeking equitable relief and monetary damages. Each defendant has moved separately to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District contends that no claim of municipal liability has been stated [Dkt. # 12]; Sgt. Smith contends that he is entitled to qualified immunity [Dkt. # 17]. For the reasons explained below, I will grant the District's motion and deny Defendant Smith's motion without prejudice.

**I. BACKGROUND**

The alleged facts, accepted for present purposes as true, are taken from plaintiff's amended complaint and addendum filed on February 28, 2017 [Dkt. # 15] (hereinafter "Addendum").[1] In April 2016, while assigned to a cell block "as an inmate detail worker,"

---

[1] Courts generally "must construe *pro se* filings liberally" and read "all of the plaintiff's filings together[.]" *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

1

plaintiff was attacked by an inmate being escorted by Sgt. Smith. The inmate was "handcuff[ed] from the front," but otherwise "had no restraints, and was allowed to walk freely from [the] Sally Port[.]" Addendum at 2. The inmate "was able to strike and assault the plaintiff by sneaking from behind using the handcuffs as a weapon pounding like a sledge hammer[.]" *Id*. As a result, plaintiff "suffered injuries to the neck, head, and upper right side of his shoulder and face," and he "remains in continuing pain." Am. Compl. at 1. Plaintiff alleges that "the District of Columbia refused to treat [his] injuries," *id.*, but that the medical staff gave him ibuprofen for "pain and suffering," Addendum at 2.

Plaintiff invokes the Fifth and Eighth Amendments to the Constitution, claiming (1) that Sgt. Smith "failed to properly control and escort" the other inmate in accordance with "hands on policy[,] which enabled [the inmate] to assault" him, and (2) that the District of Columbia "failed to properly train Sgt. D. Smith" and was deliberately indifferent to plaintiff's medical needs. Am. Compl. at 1.

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The motion does not test a plaintiff's ultimate likelihood of success on the merits, but only forces the court to determine whether a plaintiff has properly stated a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991). The court "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But "the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal

conclusions cast as factual allegations." *Id*. (citation omitted).

A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hurd v. District of Columbia,* 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (other citation omitted)). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation and internal quotation marks omitted). Thus, a complaint containing only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and factually void legal conclusions cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. Although a *pro se* complaint, such as here "must be held to less stringent standards than formal pleadings drafted by lawyers[,]" the plaintiff still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. 679).

### III. ANALYSIS

Section 1983 provides a remedy against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. "[T]he statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (citation omitted). Therefore, a plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and

(2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (quotation marks and citation omitted).

## A. Municipal Liability

Section 1983 claims are typically brought against government actors in their personal capacity, *see Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997), such that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. But a municipal corporation like the District is a "person" within the meaning of § 1983 "when [its] official policy or custom causes [a] complainant to suffer a deprivation of [a] constitutional" or federal right. *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).

To state a municipal liability claim, plaintiff must allege first that a constitutional violation occurred and second that the District was the "moving force of the constitutional violation[.]" *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). In pleading the constitutional violation, "neither District of Columbia policy makers nor employees need be implicated. All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Plaintiff attributes his severe injuries to Sgt. Smith's failure to follow proper procedures for escorting inmates through the cell block, and he baldly suggests that Sgt. Smith was inadequately trained. It is long established precedent that a prisoner has an Eighth Amendment right "to humane conditions of confinement," which include "adequate . . . medical care" and

"reasonable safety measures to guarantee the safety of the inmates."[2] *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). As a result, prison officials are duty-bound "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citation and internal quotation marks omitted); *see Morgan v. District of Columbia*, 824 F.2d 1049, 1057 (D.C. Cir. 1987) ("Although the state is not obliged to insure an assault-free environment, a prisoner has a constitutional right to be protected from the unreasonable threat of violence from his fellow inmates."). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that a prison official acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 834. An officer acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. As the discussion of Sgt. Smith's qualified immunity will demonstrate in more detail, I find that plaintiff has adequately pled a predicate constitutional violation, but only with respect to the assault.

With respect to his medical treatment, Mr. Bowser has failed to plead a constitutional violation. In order to state an Eighth Amendment claim based on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In contrast to Mr. Bowser's conclusory allegation in the complaint that he received no medical treatment, he later

---

[2] It is unclear from the complaint if plaintiff is a convicted inmate, to whom the Eighth Amendment applies, or a pretrial detainee, to whom the Fifth Amendment applies. Regardless, a pretrial detainee's rights "are at least as great as those afforded to a convicted prisoner under the Eighth Amendment," and the legal analysis, at least as applicable to the present circumstances, is essentially the same. *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 189 (D.D.C. 2009) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (other citation omitted)).

admits that he was seen by the medical staff and given ibuprofen "for pain and suffering." Addendum at 2. Plaintiff complains that he received "no medical diagnostics, x-rays, MRI, etc." *Id*. at 3.

> [W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under [tort law]."

*Estelle*, 429 U.S. at 107.

Under the second requirement of the municipal liability claim, plaintiff must allege facts from which the Court may find causation, *i.e*., an affirmative or direct link between the constitutional violation and a policy or custom of the District. *See id*. Plaintiff's claim fails on this element. The Court of Appeals instructs:

> There are a number of ways in which a policy can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy . . . that violates the Constitution . . . the action of a policy maker within the government . . . the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom . . . or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.

*Id*. at 1306 (citations and internal quotation marks omitted). Plaintiff mentions failure to train as a theory, but he has not alleged any facts from which the Court can find or infer that the District "knew or should have known about the [alleged] constitutional violation[], but did nothing." *Warren*, 353 F.3d at 39 (internal quotation marks omitted); *see Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) ("Only if a municipal policy was 'so likely to result in the violation of constitutional rights,' and the need to change the policy 'so obvious,' could

6

'policymakers of the city . . . have been deliberately indifferent to the need.'" (quoting *Canton*, 489 U.S. at 390). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," and plaintiff offers no allegations of similar scenarios having occurred in the past. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). Accordingly, the Court will grant the District's motion to dismiss for failure to state a claim.

## B. Personal Liability

Sgt. Smith argues that he is entitled to qualified immunity because he violated no "clearly established constitutional right in failing to properly escort Plaintiff's assailant through the prison cell-block." Smith Mot. Dismiss at 1. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotation marks omitted). At the time of the challenged conduct, the contours of the constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations and internal quotation marks omitted). There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. . . . And reasonableness of official action, in turn, must be assessed in light of the

7

legal rules that were clearly established at the time [the action] was taken." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (internal quotation omitted) (bracket in original)).

In addressing qualified immunity, the Court must decide: (1) whether a violation of a constitutional right has been alleged factually, and (2) whether the right was "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. "In order to defeat qualified immunity at the motion to dismiss stage, plaintiff must allege facts that plausibly establish" that qualified immunity does not apply. *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017) (quoting *Wood v. Strickland*, 420 U.S. 308, 322, (1975), and citing *Iqbal*, 556 U.S. at 685).

With regard to the first prong, I find that plaintiff has adequately pled a predicate constitutional violation, at least at this juncture. To establish a violation of constitutional rights in this context, "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm," and that a prison official acted with "deliberate indifference" to that risk, which "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 834-35. Plaintiff attributes the attack to Sgt. Smith's failure to follow the District's alleged "Hands-on" policy, which, according to plaintiff, required Sgt. Smith to escort the inmate only while in "restraints" consisting of handcuffs, belly and ankle chains, and a "clip on key-ring chain holder," and to maintain "hands on the inmate at all times." Addendum at 2. Although plaintiff has not supplied the policy, Sgt. Smith does not deny that such a policy existed at the time or that he failed to follow the policy. For a motion to dismiss, Plaintiff "must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga*, 677 F.3d at 476, and the complaint survives if it "state[s] a claim to relief that is plausible." *Iqbal*, 556 U.S. at 678. Based on Sgt. Smith's alleged violation of a hands-on policy, one fair inference is that the

rule was adopted in response to "conditions posing a substantial risk of serious harm" to prisoners, and that Sgt. Smith acted with "deliberate indifference" to that substantial risk in Mr. Bowser's case. *See Farmer*, 511 U.S. at 834. Of course, a mere violation of a prison policy does not constitute a violation of the Constitution, *Davis v. Scherer*, 468 U.S. 183, 194 (1984), and no personal liability will result in "a random-violence case," *Averhart v. Warden*, 590 F. App'x 873, 875 (11th Cir. 2014), without further facts demonstrating deliberate indifference to substantial risk. *Farmer*, 511 U.S. at 834. But at this juncture, with only plaintiff's allegations and reasonable inferences therefrom, I cannot conclude that a violation of the Constitution is implausible.

With regard to the second prong, a prisoner's "constitutional right to be protected from the unreasonable threat of violence" was established long before plaintiff's alleged attack in April 2016. *Morgan*, 824 F.2d at 1057. If Sgt. Smith did indeed violate the Constitution, it is at least plausible that the unique circumstances surrounding Mr. Bowser's assault rendered Sgt. Smith's obligations so obvious that "every reasonable official would have understood" his constitutional obligations at the time. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The Supreme Court has routinely admonished federal courts "not to define clearly established law at a high level of generality," *al-Kidd*, 563 U.S. at 742, and without more facts to flesh out Plaintiff's allegation that Sgt. Smith violated the Constitution by disobeying the hands-on policy, I cannot conclude that a clearly established right was not violated.

Accordingly, it is

**ORDERED** that the District of Columbia's Motion to Dismiss [Dkt. # 12] is **GRANTED**, and Defendant Smith's Motion to Dismiss [Dkt. # 17] is **DENIED** without prejudice. The decision as to the District's Motion to Dismiss is a final, appealable order. Sgt. Smith may reassert his qualified immunity defense in an adequately supported motion filed by **February 9, 2018**.

**SO ORDERED.**

Dated: January 18, 2018                                     TREVOR N. MCFADDEN
                                                            United States District Judge